UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>JULIE ANN YOUNGREN,<br>Debtor | Case No:    17-17355 - TBM |
| | Chapter     7 |
| HSBC BANK USA, N.A., AS TRUSTEE FOR<br>STRUCTURED ADJUSTABLE RATE MORTGAGE<br>LOAN TRUST MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2005-1 and its SUCCESSORS,<br>ASSIGNS, SERVICERS, TRUSTEES AND INVESTORS,<br>Creditor<br>vs.<br>JULIE ANN YOUNGREN and KEVIN P KUBIE, Trustee<br>Respondents | |

### Motion For Relief From Stay

Comes now, HSBC BANK USA, N.A., AS TRUSTEE FOR STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1, hereinafter "Movant", by and through its attorneys, JANEWAY LAW FIRM, P.C., and requests that this Court enter an Order For Relief From Stay pursuant to 11 U.S.C. Section 362(d).  As grounds for this Motion, Movant states:

1.      Debtor filed this Bankruptcy petition on August 8, 2017.

2.      Movant seeks to terminate the automatic stay as to Movant.

3.      Debtor, JULIE A YOUNGREN signed a Note for the benefit of Movant or Movant's predecessors in interest on the Note.  Said Note was in the original amount of $131,950.00. Movant is entitled to enforce said Note.

4.      Movant is a secured creditor by virtue of the Deed of Trust signed by Debtor JULIE A YOUNGREN, recorded in the County where the property is located on October 29, 2004 at reception number 204179931.

5.      All rights and remedies under the Deed of Trust have been assigned to Movant pursuant to that certain Assignment of Deed of Trust.

6.      Nationstar Mortgage LLC services the loan on the property referenced in this motion for relief. In the event the automatic stay is extinguished, this bankruptcy case is dismissed, or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee.

7.      Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contacts, judgments, mortgages, loan modifications and security agreements in support of right to seek a lift of the automatic stay and foreclosure if necessary.  The copies were provided to counsel by Movant, or obtained from public records.

8.     The property (hereinafter "Property") described in the Deed of Trust and the subject of this Motion appears to be the Debtor's principal residence:

> SEE ATTACHED LEGAL DESCRIPTION
> Purported Common Address: 2130 ALICIA PT APT 203, COLORADO SPRINGS, CO 80919

9.     The current value of the property is approximately $125,000.00 pursuant to the debtor's schedules.

10.    As of September 8, 2017, the unpaid principal balance of the Note is $119,236.38.

11.    The current payment amount is $811.37 and includes principal, interest, taxes and insurance.

12.    Debtor is in default pursuant to the terms of the Note and Deed of Trust by failure to make payments as due.  As of September 8, 2017 Debtor is currently in default of 14 payments, along with other fees and charges.  A payment history is provided.  The approximate amount necessary to cure the default that gave rise to this motion is estimated to be:

| | |
|---|---|
| 4 Payments at $821.23 | $3,284.92 |
| 5 Payments at $843.30 | $4,216.50 |
| 1 Payments at $804.12 | $804.12 |
| 4 Payments at $811.37 | $3,245.48 |
| Property Inspections | $135.00 |
| Foreclosure Attorney Fees & Costs | $2,013.42 |
| Estimated Total | $13,699.44 |

13.    In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested herein, Movant has also incurred $750.00 in legal fees and $181.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

14.    An additional payment of $811.37 will come due on October 1, 2017.

15.    The loan was active in foreclosure prior to the bankruptcy petition being filed. The Notice of Election and Demand was recorded with the Public Trustee on July 14, 2017. The sale date will be rescheduled once relief from the stay enters.

16.    To the best knowledge of the undersigned attorney, the Debtor has not recently requested a loan modification.

17.    The approximate payoff to Movant of the entire debt owed as of September 8, 2017 is estimated to be:

| | |
|---|---|
| Unpaid Principal Balance | $119,236.38 |
| Interest | $4,852.31 |
| (Suspense) | -$0.00 |
| Property Inspections | $135.00 |
| Escrow Advance | $1,132.25 |
| Foreclosure Attorney Fees & Costs | $2,013.42 |
| Estimated Total | $127,369.36 |

18.     Movant has grounds for relief from stay pursuant to 11 U.S.C. § 362(d)(2).  The property value, for purposes of this motion, should be reduced by the foreclosure costs, subsequent resale costs, and weighed against the increasing debt amount.  *See In re Mountain Side Holdings, Inc., 142 B.R. 421, 423 (Bankr.D.Colo.1992) and In re Steffens, 275 B.R. 570, (Bankr.D.Colo 2002) and In re Dickinson, 185 B.R.76 (Bankr.D.Colo.1992).*  The Debtor has no measurable equity in the property.  The property is not necessary to an effective reorganization.  Debtor's case is a Chapter 7 liquidation, not reorganization.

19.     In addition or in the alternative, Movant has cause for relief from stay pursuant to 362(d)(1).  Debtor has failed to make payments, and the increasing debt and the costs of obtaining and liquidating the property, leave Movant without adequate protection. Debtor's default constitutes cause for relief from stay pursuant to 362(d)(1).

20.     As further relief sought by Creditor in this Motion, Creditor requests that this Court's Order granting relief from stay be effective immediately, and not stayed pursuant to F.R.B.P. 4001(a)(3).

If the notice filed herein regarding this motion specifies a hearing date more than 30 days from filing the motion, Movant hereby waives its rights to have this matter heard sooner.

WHEREFORE, Movant requests this Court to enter an Order Granting Relief from Stay.

Dated: September 22, 2017
Attorneys for HSBC BANK USA, N.A., AS TRUSTEE FOR STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1
JANEWAY LAW FIRM, P.C.

Lynn M. Janeway #15592
David R. Doughty #40042
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Nicholas H. Santarelli #46592
Sheila J. Finn #36637
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990
Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF No.: 17-016060

Legal Description

CONDOMINIUM UNIT 203, BUILDING 2130, ARBORS AT MOUNTAIN SHADOWS, PHASE I, A
CONDOMINIUM COMMUNITY, ACCORDING TO THE DECLARATION THEREOF FILED FOR RECORD IN THE
RECORDS OF THE OFFICE OF THE CLERK AND RECORDER OF EL PASO COUNTY, STATE OF COLORADO
ON SEPTEMBER 25, 2002, UNDER RECEPTION NO. 202162700, AND ANY AMENDMENTS AND/OR
SUPPLEMENTS THERETO AND AS DEFINED AND DESCRIBED IN THE CONDOMINIUM MAP FOR ARBORS
AT MOUNTAIN SHADOWS, PHASE I, A CONDOMINIUM COMMUNITY, RECORDED ON SEPTEMBER 25,
2002, UNDER RECEPTION NO. 202162698, IN SAID RECORDS.

In re:
JULIE ANN YOUNGREN, XXX-XX-0661

Case Number:      17-17355 TBM
Chapter:      7

### AFFIDAVIT PURSUANT TO THE SERVICEMEMBER CIVIL RELIEF ACT OF 2003

I, Amanda Bishop, being of lawful age, first duly sworn, hereby state as follows:

I am over the age of 18 and am an employee of JANEWAY LAW FIRM, P.C.

On September 22, 2017, I, Amanda Bishop; performed a search on the Department of Defense Manpower Data Center. Upon searching the information data banks of the Department of Defense Manpower Data Center (DMDC), the DMDC does not possess any information indicating that the Debtor, JULIE ANN YOUNGREN, is currently on active duty as to all branches of the Military.

Dated: September 22, 2017

By: _____
      Amanda Bishop

Title: <u>Paralegal</u>

Subscribed and affirmed before me in Douglas County, State of Colorado on September 22, 2017.

Seal and Commission expiration date:

_____
(Notary's official signature)

JLF #: 17-016060

MELINDA S. PEKOL
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20064045259
MY COMMISSION EXPIRES MARCH 23, 2020

Department of Defense Manpower Data Center

Results as of : Sep-22-2017 02:15:08 PM

SCRA 4.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-0661
Birth Date:
Last Name:       YOUNGREN
First Name:      JULIE
Middle Name:     ANN
Status As Of:    Sep-22-2017
Certificate ID:  SZ1Y6ZVBZ313453

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                                    Case No:        17-17355 - TBM
JULIE ANN YOUNGREN,
Debtor

                                                          Chapter         7

HSBC BANK USA, N.A., AS TRUSTEE FOR
STRUCTURED ADJUSTABLE RATE MORTGAGE
LOAN TRUST MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-1 and its SUCCESSORS,
ASSIGNS, SERVICERS, TRUSTEES AND INVESTORS,
Creditor
vs.
JULIE ANN YOUNGREN and KEVIN P KUBIE, Trustee
Respondents

**NOTICE OF MOTION FOR RELIEF FROM STAY**
**AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 362(d)**
**OBJECTION DEADLINE: <u>October 12, 2017</u>**

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Stay has been filed, a copy of which is attached hereto.

A hearing on the Motion has been set for **October 19, 2017 at 9:00 A.M at the U.S. Custom House, 721 19th Street, in Courtroom E, Denver, Colorado 80202-2508.**  The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested may be granted without further notice to you.

Dated: September 22, 2017

Janeway Law Firm, P.C.
Attorneys for HSBC BANK USA, N.A., AS TRUSTEE FOR STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1

Lynn M. Janeway #15592
David R. Doughty #40042
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Nicholas H. Santarelli #46592
Sheila J. Finn #36637
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990 Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF No.: 17-016060

<u>Certificate of Service</u>

The undersigned hereby certifies that on September 22, 2017 a copy of the attached Notice of Hearing or Preliminary Hearing with a copy of the Motion for Relief from Stay was deposited into U.S. mail in an envelope with prepaid, first class postage and addressed as follows:

JULIE ANN YOUNGREN
2130 ALICIA PT
#203
COLORADO SPRINGS, CO 80919

DANIEL K. USIAK, JR.
18 E. WILLAMETTE AVE.
COLORDO SPRINGS, CO 80903

US TRUSTEE
PAPER COPY NOT MAILED PURSUANT TO L.B.R. 4001-1

KEVIN P KUBIE
PO BOX 8928
PUEBLO, CO 81008-8928

_____
Amanda Bishop

LOAN NO.: ███████████

MIN: ███████████

# ADJUSTABLE RATE NOTE

(LIBOR Six Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

OCTOBER 22, 2004                COLORADO SPRINGS,        CO
                                      [City]                    [State]

           2130 ALICIA PT APT 203
           COLORADO SPRINGS, CO  80919
                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   131,950.00   (this amount is called "Principal"), plus interest, to the order of Lender.  Lender is
RBC MORTGAGE COMPANY,

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of    5.625    %.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the    1ST    of each month beginning on  DECEMBER 1, 2004   .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on
NOVEMBER 1, 2034           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
PO BOX 948, ROCKY MOUNT, NC 27802
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    618.52    .  This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on    NOVEMBER 1, 2009            , and on that day every   6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
   TWO AND ONE QUARTER       percentage point(s) (   2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE  ADJUSTABLE RATE NOTE - LIBOR 6 MONTH INDEX  (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
FNMA3520 (01/01)  Single Family - Fannie Mae Uniform Instrument

Initials: _____

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than        **11.625**        % or less than        **2.250**        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than        **TWO**        percentage point(s) (        **2.000**        %) from the rate of interest I have been paying for the preceding        **6**        months. My interest rate will never be greater than        **11.625**        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        **15**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        **5.000**        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR 6 MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
FNMA3520 (01/01) Single Family - Fannie Mae Uniform Instrument

Initials: _____

Page 2 of 3

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JULIE A YOUNGREN                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

MULTISTATE  ADJUSTABLE  RATE NOTE - LIBOR 6 MONTH INDEX  (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
FNMA A3520 (01/01)  Single Family - Fannie Mae Uniform Instrument

Page 3 of 3

PAY TO THE ORDER OF

RRC MORTGAGE COMPANY
WITHOUT RECOURSE

BY:

NAME: LORA BRIDGES

TITLE: COLLATERAL ASSISTANT MGR

# INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

Loan No.: ███████████

Property Address:   2130 ALICIA PT APT 203
                    COLORADO SPRINGS, CO  80919

THIS ADDENDUM is made this  22ND   day of   OCTOBER, 2004       , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to

   RBC MORTGAGE COMPANY
   AN ILLINOIS CORPORATION
(the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

## 3.  PAYMENTS
### (A) Time and Place of Payments
I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on DECEMBER 1, 2004 . I will make these payments every month until I have paid all of the principal and interest and  any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on  NOVEMBER 1, 2034       I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at
   PO BOX 948, ROCKY MOUNT, NC 27802                                   ,
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $      618.52     .  This payment amount is based on the original principal balance of the Note.  This payment amount may change.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND ONE QUARTER       percentage point(s) (  2.250  %) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits states in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

RBC Mortgage - Form PR60310 - 10 Year Interest Only

5.000

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-only Period, may payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   (A) **Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my over due payment of interest for the first 36 payments, % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

OCTOBER 22, 2004
_____
Date

_Julie A. Youngren_
_____
Borrower   JULIE A YOUNGREN

_____
Borrower

_____
Borrower

_____
Borrower

LOAN NO. ▓▓▓▓▓▓▓

# ADDENDUM TO NOTE

This Addendum is made on OCTOBER 22, 2004             , and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this Addendum is described in the Security Instrument and located at:

2130 ALICIA PT APT 203
COLORADO SPRINGS, CO 80919
[Property Address]

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/We further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.625 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 11.625 %. My interest rate will never be less than 2.250 %.

## UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1201 LIBOR Addendum to Note (1/01)
PR1201

Page 1 of 2

In Witness Thereof, Trustor has executed this Addendum.

OCTOBER 22, 2004
_____
Date

_____
Witness

_____ (Seal)
JULIE A YOUNGREN                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

# EXHIBIT A

CONDOMINIUM UNIT 203, BUILDING 2130, ARBORS AT MOUNTAIN SHADOWS, PHASE I, A
CONDOMINIUM COMMUNITY, ACCORDING TO THE DECLARATION THEREOF FILED FOR RECORD IN THE
RECORDS OF THE OFFICE OF THE CLERK AND RECORDER OF EL PASO COUNTY, STATE OF COLORADO
ON SEPTEMBER 25, 2002, UNDER RECEPTION NO. 202162700, AND ANY AMENDMENTS AND/OR
SUPPLEMENTS THERETO AND AS DEFINED AND DESCRIBED IN THE CONDOMINIUM MAP FOR ARBORS
AT MOUNTAIN SHADOWS, PHASE I, A CONDOMINIUM COMMUNITY, RECORDED ON SEPTEMBER 25,
2002, UNDER RECEPTION NO. 202162698, IN SAID RECORDS.



ROBERT C. "BOB" BALINK   El Paso County, CO
10/29/2004 11:57:28 AM
Doc $0.00        Page
Rec $91.00    1 of 18
204179931

Prepared by and When Recorded Return to:

RBC MORTGAGE CO, ATTN: FINAL DOCS
13100 NW FREEWAY, SUITE 200
HOUSTON, TX 77040

-------------------------[Space Above This Line For Recording Data]-------------------------

LOAN NO. ▮▮▮▮▮

# DEED OF TRUST

MIN ▮▮▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  OCTOBER 22, 2004
, together with all Riders to this document.
(B) "Borrower" is
JULIE A YOUNGREN, AN UNMARRIED PERSON

Borrower is the trustor under this Security Instrument.  Borrower's address is
2130 ALICIA PT APT 203
COLORADO SPRINGS, CO 80919
(C) "Lender" is RBC MORTGAGE COMPANY

Lender is a   AN ILLINOIS CORPORATION              organized and existing under the laws
of  ILLINOIS
Lender's address is
13100 NW FREEWAY, SUITE 200
HOUSTON, TX 77040
(D) "Trustee" is the Public Trustee of   EL PASO                    County, Colorado.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated   OCTOBER 22, 2004
The Note states that Borrower owes Lender
ONE HUNDRED THIRTY-ONE THOUSAND NINE HUNDRED FIFTY AND 00/100
Dollars (U.S. $ 131,950.00     ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  NOVEMBER 1, 2034      .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all riders to this Security Instrument that are executed by Borrower.  The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3006   (01/01)
MERS 3006





account.   Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" mean those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.   As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.   This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.   For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the       COUNTY                              of

EL PASO                              :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT "A"

PIN #: 7311305022

which currently has the address of       2130 ALICIA PT APT 203, COLORADO SPRINGS
                                                                        [Street]                                    [City]
        Colorado   80919                       ("Property Address"):
                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property;   and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.   Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.   Borrower shall also pay funds for Escrow Items pursuant to Section 3.

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3006   (01/01)
MERS 3006



Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3006   (01/01)
MERS 3006



Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3006  (01/01)
MERS 3006



Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3006  (01/01)
MERS 3006



of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as ) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b)  **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3006  (01/01)
MERS 3006

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

COLORADO - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3006  (01/01)
MERS 3006

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b)

COLORADO - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**      Form 3006   (01/01)
MERS 3006
Page 8 of 10



which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _Julie A. Youngren_____ (Seal)
                                                          - Borrower
                             JULIE A YOUNGREN

_____    _____ (Seal)
                                                          - Borrower

                             _____ (Seal)
                                                          - Borrower

                             _____ (Seal)
                                                          - Borrower

-----------------------[Space Below This Line For Acknowledgment]-----------------------

STATE OF _CO_____ }
County of _Arapaho_____ } ss.

On this _22_ day of _October 2004_____, before me, the undersigned, a Notary Public in and for said County, personally appeared
JULIE A YOUNGREN

_____, and acknowledged the execution of the foregoing instrument.

Witness my hand and official seal.

My Commission expires:

                             _____
                                                    Notary Public

M. SAUER
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires Jan. 12, 2008

# ADJUSTABLE RATE RIDER

### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

LOAN NO. ███████████

THIS ADJUSTABLE RATE RIDER is made this    22ND    day of    OCTOBER, 2004    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to

RBC MORTGAGE COMPANY,
AN ILLINOIS CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2130 ALICIA PT APT 203
COLORADO SPRINGS, CO 80919
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**    In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of    5.625    %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on    NOVEMBER 1, 2009    , and on that day
every 6th    month thereafter. Each date on which my interest rate could change is called a "Change
Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

Multistate Adjustable Rate Rider - LIBOR 6 Mo Index (As Published in the Wall Street Journal) - Single Family - FNMA Uniform Instrument
FNMA3138

Initials: ___

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER percentage point(s) ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.625 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 11.625 %, nor less than 2.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Multistate Adjustable Rate Rider - LIBOR 6 Mo Index (As Published in the Wall Street Journal) - Single Family - FNMA Uniform Instrument FNMA3138

Initials:

Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JULIE A YOUNGREN                                        - Borrower

_____ (Seal)
                                                                      - Borrower

_____ (Seal)
                                                                      - Borrower

_____ (Seal)
                                                                      - Borrower

Multistate Adjustable Rate Rider - LIBOR 6 Mo Index (As Published in the Wall Street Journal) - Single Family - FNMA Uniform Instrument
FNMA3138

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Loan No.: ███████

Property Address:   2130 ALICIA PT APT 203
                    COLORADO SPRINGS, CO  80919

**THIS ADDENDUM** is made this  22ND day of  OCTOBER, 2004        , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to

RBC MORTGAGE COMPANY
AN ILLINOIS CORPORATION
(the "Lender").

**THIS ADDENDUM** supersedes Section 4(c) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE QUARTER**               percentage points (  2.250     %) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Interest-Only Addendum to Adjustable Rate Rider
PR603F

Page 1 of 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum to Adjustable Rate Rider

_____ (Seal)
JULIE A YOUNGREN                    - Borrower

_____ (Seal)
                                   - Borrower

_____ (Seal)
                                   - Borrower

_____ (Seal)
                                   - Borrower

Interest-Only Addendum to Adjustable Rate Rider
PR603F

# CONDOMINIUM RIDER

**LOAN NO.** ▮▮▮▮▮

THIS CONDOMINIUM RIDER is made this 22ND day of     OCTOBER,     2004  , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
**RBC MORTGAGE COMPANY**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2130 ALICIA PT APT 203**
**COLORADO SPRINGS, CO   80919**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**ARBORS AT MOUNTAIN SHADOWS**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code or regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and  any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:  (i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property;

MULTISTATE  CONDOMINIUM  RIDER - Single  Family - Fannie  Mae/Freddie  Mac  UNIFORM  INSTRUMENT
FNMA3140 (10/00)                              Page 1 of 2                              FORM 3140 1/01

and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the adandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Julie A. Youngren_ _____ (Seal)  _____ (Seal)
JULIE A. YOUNGREN                -Borrower                                         -Borrower

_____ (Seal)  _____ (Seal)
                                   -Borrower                                         -Borrower

*[Sign Original Only]*

## EXHIBIT A

CONDOMINIUM UNIT 203, BUILDING 2130, ARBORS AT MOUNTAIN SHADOWS, PHASE I, A
CONDOMINIUM COMMUNITY, ACCORDING TO THE DECLARATION THEREOF FILED FOR RECORD IN THE
RECORDS OF THE OFFICE OF THE CLERK AND RECORDER OF EL PASO COUNTY, STATE OF COLORADO
ON SEPTEMBER 25, 2002, UNDER RECEPTION NO. 202162700, AND ANY AMENDMENTS AND/OR
SUPPLEMENTS THERETO AND AS DEFINED AND DESCRIBED IN THE CONDOMINIUM MAP FOR ARBORS
AT MOUNTAIN SHADOWS, PHASE I, A CONDOMINIUM COMMUNITY, RECORDED ON SEPTEMBER 25,
2002, UNDER RECEPTION NO. 202162698, IN SAID RECORDS.

217089204          7/28/2017 10:12 AM
PGS   1          $13.00   DF $0.00
Electronically Recorded Official Records El Paso County CO
Chuck Broerman, Clerk and Recorder
TD1000   N



CORPORATE ASSIGNMENT OF DEED OF TRUST

El Paso, Colorado
SELLER'S SERVICING #: ███████████ "YOUNGREN"

MIN #: ████████████ SIS #: 1-888-679-6377

Date of Assignment: July 21st, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RBC MORTGAGE COMPANY, ITS
SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: HSBC BANK USA, N.A., AS TRUSTEE FOR STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1 at 425 WALNUT STREET, CINCINNATI, OH  45202

Executed By: JULIE A YOUNGREN, AN UNMARRIED PERSON  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR RBC MORTGAGE COMPANY
Dated: 10/22/2004 Recorded: 10/29/2004 as instrument No.: 204179931 In the County of El Paso, State of Colorado.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby
acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal
sum of $131,950.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein
contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms
contained in said Deed of Trust  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RBC MORTGAGE COMPANY, ITS
SUCCESSORS AND ASSIGNS
On July 21st, 2017

By: _____
MOHAMED HAMEED, Assistant
Secretary


STATE OF Texas
COUNTY OF Dallas

On July 21st, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared
MOHAMED HAMEED, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RBC
MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS, personally known to me to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity,
and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
My Comm. Expires 11-30-2019
Notary ID #130453613

(This area for notarial seal)


When Recorded Return To:  DOCUMENT ADMINISTRATION, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX
75019

```
SR497CR-02                          Nationstar Mortgage LLC                              8/14/17  1:49:46
VC1036                            DETAIL TRANSACTION HISTORY                           JOB DT: 8/14/17
                                                                                        PAGE:        1

LOAN#  ███████     INV# AKY    POOL# 000001      NEXT DUE 8/01/16   INTEREST RATE 3.125   PRIN.BAL  119,236.38
BORR1  JULIE A. YOUNGREN       TYPE: 05-00 Conv/Ins                                       ESC.BAL   2,133.42-
BORR2  ADDL INFORMATION                         INT PD TO 7/01/16   P&I SHORT      .00    CORP AD
PROP:  2130 ALICIA PT     MAIL: PO BOX 50573
       #203
       COLORADO SP CO 80901      COLORADO SPRING CO 80949
```

| NBR | TRANSACTION DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS.BALANCES PRINCIPAL | ESCROW | TOTAL AMOUNT | APPLIED PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 241 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 34.52- | .00 | .00 | .00 | .00 | 34.52-01 |
| 240 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 34.52- | .00 | .00 | .00 | .00 | 34.52-01 |
| 239 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 34.52- | .00 | .00 | .00 | .00 | 34.52-01 |
| 238 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 34.52- | .00 | .00 | .00 | .00 | 34.52-01 |
| 237 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 35.63- | .00 | .00 | .00 | .00 | 35.63-01 |
| 236 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 35.63- | .00 | .00 | .00 | .00 | 35.63-01 |
| 235 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F D REF# | 8/16 | 119236.38 | .00 | 35.63- | .00 | .00 | .00 | .00 | 35.63-01 |
| 234 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F C REF# | 8/16 | 119236.38 | .00 | 35.63- | .00 | .00 | .00 | .00 | 35.63-01 |
| 233 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F C REF# | 8/16 | 119236.38 | .00 | 35.63- | .00 | .00 | .00 | .00 | 35.63-01 |
| 232 | 8/10/17 | 2664 | NON CASH FEE ADJ / S/F C REF# | 8/16 | 119236.38 | .00 | 37.10- | .00 | .00 | .00 | .00 | 37.10-01 |
| 231 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 512.50- | .00 | .00 | .00 | 512.50-26 | |
| 230 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 400.00- | .00 | .00 | .00 | 400.00-26 | |
| 229 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 3.43- | .00 | .00 | .00 | 3.43-26 | |
| 228 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 25.00- | .00 | .00 | .00 | 25.00-26 | |
| 227 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 6.00- | .00 | .00 | .00 | 6.00-26 | |
| 226 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 6.00- | .00 | .00 | .00 | 6.00-26 | |
| 225 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 6.00- | .00 | .00 | .00 | 6.00-26 | |
| 224 | 7/31/17 | 6226 | CORP ADV DISB / PAYEE 61JANEW #1001562318 DUE / S/F SC REF# 1001562318 | 8/16 7/31/17 | 119236.38 | .00 | 224.00- | .00 | .00 | .00 | 224.00-26 | |

```
SR497CR-02                              Nationstar Mortgage LLC                        8/14/17  1:49:46
VC1036                               DETAIL TRANSACTION HISTORY                     JOB DT: 8/14/17
                                                                                         PAGE: 2
```

| NBR | TRANSACTION DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS BALANCES PRINCIPAL | ESCROW | TOTAL AMOUNT | APPLIED PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | CONTINUED | | | | | | | | | |
| 223 | 7/17/17 | 6225 | MISC SUSP DISB | 8/16 | 119236.38 | .00 | 191.18- | .00 | .00 | .00 | .00 | 191.18-25 |
| | | | PAYEE YOUNGRE #100632853 9 DUE 7/14/17 | | | | | | | | | |
| | | | S/F SC REF# 100632853 9 | | | | | | | | | |
| 222 | 7/14/17 | 1325 | PMT-MISC SUSP | 8/16 | 119236.38 | .00 | 191.18 | .00 | .00 | .00 | .00 | 191.18 25 |
| | | | S/F AD REF# 000 | | | | | | | | | |
| 221 | 7/14/17 | 2624 | FOREARANCE ADJ | 8/16 | 119236.38 | .00 | 191.18- | .00 | .00 | .00 | .00 | 191.18-24 |
| | | | S/F AD REF# 000 | | | | | | | | | |
| 220 | 7/13/17 | 6226 | CORR ADV DISB | 8/16 | 119236.38 | .00 | 230.00- | .00 | .00 | .00 | .00 | 230.00-26 |
| | | | PAYEE 61JANEW #1001559779 DUE 7/13/17 | | | | | | | | | |
| | | | S/F SC REF# 1001559779 | | | | | | | | | |
| 219 | 7/13/17 | 6226 | CORP ADV DISB | 8/16 | 119236.38 | .00 | .49- | .00 | .00 | .00 | .00 | .49-26 |
| | | | PAYEE 61JANEW #1001559779 DUE 7/13/17 | | | | | | | | | |
| | | | S/F SC REF# 1001559779 | | | | | | | | | |
| 218 | 7/10/17 | 6226 | CORP ADV DISB | 8/16 | 119236.38 | .00 | 495.00- | .00 | .00 | .00 | .00 | 495.00-26 |
| | | | PAYEE 61JANEW #1001559070 DUE 7/10/17 | | | | | | | | | |
| | | | S/F SC REF# 1001559070 | | | | | | | | | |
| 217 | 7/10/17 | 6226 | CORP ADV DISB | 8/16 | 119236.38 | .00 | 105.00- | .00 | .00 | .00 | .00 | 105.00-26 |
| | | | PAYEE 61JANEW #1001559070 DUE 7/10/17 | | | | | | | | | |
| | | | S/F SC REF# 1001559070 | | | | | | | | | |
| 216 | 7/07/17 | 6226 | CORR ADV DISB | 8/16 | 119236.38 | .00 | 15.00- | .00 | .00 | .00 | .00 | 15.00-26 |
| | | | PAYEE 63FIELD #1001558962 DUE 7/07/17 | | | | | | | | | |
| | | | S/F SC REF# 1001558962 | | | | | | | | | |
| 215 | 6/19/17 | 6226 | CORP ADV DISB | 8/16 | 119236.38 | .00 | 15.00- | .00 | .00 | .00 | .00 | 15.00-26 |
| | | | PAYEE 63FIELD #1001555853 DUE 6/19/17 | | | | | | | | | |
| | | | S/F SC REF# 1001555853 | | | | | | | | | |
| 214 | 6/16/17 | 1499 | ZZZZ-Late Charges | 8/16 | 119236.38 | .00 | 37.10 | .00 | .00 | .00 | .00 | 37.10 01 |
| | | | Effective date: 6/16/17 | | | | | | | | | |
| | | | S/F | | | | | | | | | |
| 213 | 6/09/17 | 6074 | BORR PAID MI DISBURSED | 8/16 | 119236.38 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| | | | PAYEE 74RMICI # DUE 5/15/17 | | | | | | | | | |
| | | | S/F WR REF# | | | | | | | | | |
| 212 | 6/09/17 | 1974 | BORR PAID MI ADVANCE | 8/16 | 119236.38 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| | | | S/F WR REF# | | | | | | | | | |
| 211 | 5/26/17 | 6031 | COUNTY TAX DISBURSED | 8/16 | 119236.38 | .00 | 250.73- | .00 | .00 | 250.73- | .00 | |
| | | | PAYEE 31COOOJ # DUE 6/15/17 | | | | | | | | | |
| | | | S/F WR REF# | | | | | | | | | |
| 210 | 5/26/17 | 1931 | COUNTY TAX ADVANCE | 8/16 | 119236.38 | 250.73 | 250.73 | .00 | .00 | 250.73 | .00 | |
| | | | S/F WR REF# | | | | | | | | | |
| 209 | 5/18/17 | 6074 | BORR PAID MI DISBURSED | 8/16 | 119236.38 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| | | | PAYEE 74RMICI # DUE 4/15/17 | | | | | | | | | |
| | | | S/F WR REF# | | | | | | | | | |
| 208 | 5/18/17 | 1974 | BORR PAID MI ADVANCE | 8/16 | 119236.38 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| | | | S/F WR REF# | | | | | | | | | |
| 207 | 4/13/17 | 6074 | BORR PAID MI DISBURSED | 8/16 | 119236.38 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| | | | PAYEE 74RMICI # DUE 3/15/17 | | | | | | | | | |
| | | | S/F WR REF# | | | | | | | | | |
| 206 | 4/13/17 | 1974 | BORR PAID MI ADVANCE | 8/16 | 119236.38 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| | | | S/F WR REF# | | | | | | | | | |
| 205 | 3/27/17 | 1919 | RECOVER ESCROW ADVANCE | 8/16 | 119236.38 | .00 | 108.56- | .00 | .00 | 108.56- | .00 | |
| | | | S/F SP REF# | | | | | | | | | |
| 204 | 3/27/17 | 02 | PAYMENT F | 8/16 | 119236.38 | 108.56 | 821.23 | 401.11 | 311.56 | 108.56 | .00 | |

```
SR497CR-02                        Nationstar Mortgage LLC                         8/14/17  1:49:46
VCI036                          DETAIL TRANSACTION HISTORY                       JOB DT: 8/14/17
                                                                                     PAGE:  3
```

| ---TRANSACTION--- | | | | NEXT | -AFTER TRANS- | BALANCES- | TOTAL | ------------------APPLIED------------------ | | | | |
| NBR | DATE | CODE | ----DESCRIPTION---- | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTERST | ESCROW | SUSPENSE/CD | MISC. PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LOAN# | | | CONTINUED | | | | | | | | | |
| | | | Int pd to: 7/01/16 | | | | | | | | | |
| 203 | 3/27/17 | 2224 | FORBEARANCE ADJ  F  / S/F SP REF# | 7/16 | 119637.49 | .00 | 317.37- | .00 | .00 | .00 | 317.37-24 | |
| 202 | 3/10/17 | 6074 | BORR PAID MI DISBURSED / PAYEE 74RMICI# / S/F WR REF# / DUE 2/15/17 | 7/16 | 119637.49 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 201 | 3/10/17 | 1974 | BORR PAID MI ADVANCE / S/F WR REF# | 7/16 | 119637.49 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 200 | 2/21/17 | 1324 | PMT-FORBEAR SUSP / Effective date: 2/20/17 / S/F SP REF# | 7/16 | 119637.49 | .00 | 508.55 | .00 | .00 | .00 | 508.55 24 | |
| 199 | 2/10/17 | 6074 | BORR PAID MI DISBURSED / S/F WR REF# | 7/16 | 119637.49 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 198 | 2/10/17 | 1974 | BORR PAID MI ADVANCE / S/F WR REF# | 7/16 | 119637.49 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 197 | 2/07/17 | 6031 | COUNTY TAX DISBURSED / PAYEE 31CO00J# / DUE 2/28/17 / S/F WR REF# | 7/16 | 119637.49 | .00 | 250.73- | .00 | .00 | 250.73- | .00 | |
| 196 | 2/07/17 | 1931 | COUNTY TAX ADVANCE / S/F WR REF# | 7/16 | 119637.49 | 250.73 | 250.73 | .00 | .00 | 250.73 | .00 | |
| 195 | 1/13/17 | 6074 | BORR PAID MI DISBURSED / S/F WR REF# | 7/16 | 119637.49 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 194 | 1/13/17 | 1974 | BORR PAID MI ADVANCE / S/F WR REF# | 7/16 | 119637.49 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 193 | 12/30/16 | 1919 | RECOVR ESCROW ADVANCE / S/F SW REF# 0000 | 7/16 | 119637.49 | 21.24 | 21.24- | .00 | .00 | 21.24- | .00 | |
| 192 | 12/30/16 | 0236 | PAYMENT / Int pd to: 6/01/16 / S/F SW REF# 0000 | 6/01/16 | 119637.49 | 21.24 | 733.91 | 400.07 | 312.60 | 21.24 | .00 | |
| 191 | 12/30/16 | 2624 | FORBEARANCE ADJ / S/F SW REF# 0000 | 6/16 | 120037.56 | .00 | 733.91- | .00 | .00 | .00 | 733.91-24 | |
| 190 | 12/29/16 | 1616 | FORBEARANCE SUSPENSE / S/F WB REF# | 6/16 | 120037.56 | .00 | 510.98 | .00 | .00 | .00 | 510.98 24 | |
| 189 | 12/15/16 | 6074 | BORR PAID MI DISBURSED / S/F WR REF# | 6/16 | 120037.56 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 188 | 12/15/16 | 1974 | BORR PAID MI ADVANCE / S/F WR REF# | 6/16 | 120037.56 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 187 | 12/02/16 | 1919 | RECOVR ESCROW ADVANCE / S/F WR REF# | 6/16 | 120037.56 | 108.56 | 108.56- | .00 | .00 | 108.56- | .00 | |
| 186 | 12/02/16 | 0116 | PMT FROM FORB SUSP / Int pd to: 5/01/16 / S/F SP REF# | 5/01/16 | 120037.56 | 108.56 | 799.03 | 414.43 | 276.04 | 108.56 | 799.03-R4 | |
| 185 | 12/02/16 | 1616 | FORBEARANCE SUSPENSE / S/F SP REF# | 5/16 | 120451.99 | .00 | 510.98 | .00 | .00 | .00 | 510.98 24 | |
| 184 | 11/10/16 | 6074 | BORR PAID MI DISBURSED / S/F SP REF# | 5/16 | 120451.99 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 183 | 11/10/16 | 1974 | BORR PAID MI ADVANCE / S/F WR REF# | 5/16 | 120451.99 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 182 | 10/28/16 | 1616 | FORBEARANCE SUSPENSE / S/F SP REF# | 5/16 | 120451.99 | .00 | 510.98 | .00 | .00 | .00 | 510.98 24 | |

```
SR497CR-02                              Nationstar Mortgage LLC                          8/14/17  1:49:46
VC1036                              DETAIL TRANSACTION HISTORY                           JOB DT: 8/14/17
                                                                                              PAGE:  4
```

| NBR | TRANSACTION DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS PRINCIPAL | BALANCES ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | APPLIED ESCROW | SUSPENSE/CD | MISC. PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | CONTINUED | | | | | | | | | |
| 181 | 10/20/16 | 6074 | BORR PAID MI DISBURSED  S/F WR  REF# | 5/16 | 120451.99 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 180 | 10/20/16 | 1974 | BORR PAID MI ADVANCE  S/F WR  REF# | 5/16 | 120451.99 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 179 | 10/17/16 | 1499 | ZZZZF-Late Charges  S/F  REF# | 5/16 | 120451.99 | .00 | 35.63 | .00 | .00 | .00 | .00 | 35.63 01 |
| 178 | 10/07/16 | 6226 | CORP ADV DISB  PAYEE 63SSFSL #0001503607 DUE 10/06/16  S/F SC  REF# 0001503607 | 5/16 | 120451.99 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| 177 | 9/19/16 | 6074 | BORR PAID MI DISBURSED  S/F WR  REF# | 5/16 | 120451.99 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 176 | 9/19/16 | 1974 | BORR PAID MI ADVANCE  S/F WR  REF# | 5/16 | 120451.99 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 175 | 9/16/16 | 1499 | ZZZZF-Late Charges  S/F  REF# | 5/16 | 120451.99 | .00 | 35.63 | .00 | .00 | .00 | .00 | 35.63 01 |
| 174 | 9/09/16 | 6226 | CORP ADV DISB  PAYEE 63SSFSL #0001499582 DUE 9/08/16  S/F SC  REF# 0001499582 | 5/16 | 120451.99 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| 173 | 8/26/16 | 6074 | BORR PAID MI DISBURSED  S/F WR  REF# | 5/16 | 120451.99 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 172 | 8/26/16 | 1974 | BORR PAID MI ADVANCE  S/F WR  REF# | 5/16 | 120451.99 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 171 | 8/17/16 | 6226 | CORP ADV DISB  PAYEE 63SSFSL #0001499865 DUE 8/16/16  S/FSC  REF# 0001499865 | 5/16 | 120451.99 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| 170 | 8/16/16 | 1499 | ZZZZF-Late Charges  S/F  REF# | 5/16 | 120451.99 | .00 | 35.63 | .00 | .00 | .00 | .00 | 35.63 01 |
| 169 | 7/19/16 | 6226 | CORP ADV DISB  PAYEE 63SSFSL #0001491021 DUE 7/18/16  S/F SC  REF# 0001491021 | 5/16 | 120451.99 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| 168 | 7/18/16 | 1499 | ZZZZF-Late Charges  S/F  REF# | 5/16 | 120451.99 | .00 | 35.63 | .00 | .00 | .00 | .00 | 35.63 01 |
| 167 | 7/14/16 | 6074 | BORR PAID MI DISBURSED  S/F WR  REF# | 5/16 | 120451.99 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 166 | 7/14/16 | 1974 | BORR PAID MI ADVANCE  S/F WR  REF# | 5/16 | 120451.99 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 165 | 6/23/16 | 6226 | CORP ADV DISB  PAYEE 63SSFSL #0001496421 DUE 6/22/16  S/F SC  REF# 0001486421 | 5/16 | 120451.99 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| 164 | 6/16/16 | 1499 | ZZZZF-Late Charges  S/F  REF# | 5/16 | 120451.99 | .00 | 35.63 | .00 | .00 | .00 | .00 | 35.63 01 |
| 163 | 6/15/16 | 6074 | BORR PAID MI DISBURSED  S/F WR  REF# | 5/16 | 120451.99 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | |
| 162 | 6/15/16 | 1974 | BORR PAID MI ADVANCE  S/F WR  REF# | 5/16 | 120451.99 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 161 | 5/26/16 | 6226 | CORP ADV DISB  PAYEE 63SSFSL #0001481106 DUE 5/25/16  S/F SC  REF# 0001481106 | 5/16 | 120451.99 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| 160 | 5/19/16 | 6031 | CONTY TAX DISBURSED  PAYEE 31CODUJ #10578 TAR DUE 6/28/16  S/F WR  REF# 10578 TAR 2546 CO | 5/16 | 120451.99 | .00 | 249.76- | .00 | .00 | 249.76- | .00 | |

LOAN#

```
SR497CR-02                                                                    8/14/17  1:49:46
VC1036                                                                        JOB DT: 8/14/17
                                                                              PAGE:         5
                              Nationstar Mortgage LLC
                              DETAIL TRANSACTION HISTORY
```

---TRANSACTION---

| NBR | DATE | CODE | ----DESCRIPTION---- | NEXT DUE | AFTER TRANS.BALANCES PRINCIPAL | TOTAL AMOUNT | ESCROW | APPLIED PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|-----|------|------|---------------------|----------|------------------------------|--------------|--------|-------------------|----------|--------|-------------|-----------|
| LOAN# | | | CONTINUED | | | | | | | | | |
| 159 | 5/19/16 | 1931 | COUNTY TAX ADVANCE  S/F WB REF# | 5/16 | 120451.99 | 249.76 | 249.76 | .00 | .00 | 249.76- | .00 | |
| 158 | 5/17/16 | 1919 | RECOVER ESCROW ADVANCE  S/F WR REF# 10578 TAR 2546 CO | 5/16 | 120451.99 | 42.27- | .00 | .00 | .00 | 42.27- | .00 | |
| 157 | 5/17/16 | 0283 | PAYMENT  S/F WB REF# C | 5/16 | 120451.99 | 732.74 | 42.27 | 413.49 | 276.98 | 42.27 | .00 | 34.52 01 |
| | | | Int pd to: 4/01/16  C | 4/01/16 | | | | | | | | |
| 156 | 5/16/16 | 1499 | ZZZZF-Late Charges  S/F WB REF# | 4/16 | 120865.48 | 34.52 | .00 | .00 | .00 | .00 | .00 | |
| 155 | 5/16/16 | 6074 | BORR PAID MI DISBURSED  S/F REF# | 4/16 | 120865.48 | 21.99- | .00 | .00 | .00 | 21.99- | .00 | |
| 154 | 5/16/16 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 4/16 | 120865.48 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 153 | 4/25/16 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 4/16 | 120865.48 | 21.99- | .00 | .00 | .00 | 21.99- | .00 | |
| 152 | 4/25/16 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 4/16 | 120865.48 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 151 | 4/18/16 | 1499 | ZZZZF-Late Charges  S/F REF# | 4/16 | 120865.48 | 34.52 | .00 | .00 | .00 | .00 | .00 | |
| 150 | 3/29/16 | 1919 | RECOVER ESCROW ADVANCE  S/F WB REF# | 4/16 | 120865.48 | 42.27- | .00 | .00 | .00 | 42.27- | .00 | |
| 149 | 3/29/16 | 0283 | PAYMENT  S/F WB REF# | 4/16 | 120865.48 | 732.74 | 42.27 | 412.54 | 277.93 | 42.27 | .00 | 34.52 01 |
| | | | Int pd to: 3/01/16 | 3/01/16 | | | | | | | | |
| 148 | 3/16/16 | 1499 | ZZZZF-Late Charges  S/F WB REF# | 3/16 | 121278.02 | 34.52 | .00 | .00 | .00 | .00 | .00 | |
| 147 | 3/16/16 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 3/16 | 121278.02 | 21.99- | .00 | .00 | .00 | 21.99- | .00 | |
| 146 | 3/16/16 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 3/16 | 121278.02 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 145 | 2/23/16 | 1919 | RECOVER ESCROW ADVANCE  S/F WB REF# | 3/16 | 121278.02 | 42.27- | .00 | .00 | .00 | 42.27- | .00 | |
| 144 | 2/23/16 | 0283 | PAYMENT  S/F WB REF# | 3/16 | 121278.02 | 732.74 | 42.27 | 411.60 | 278.87 | 42.27 | .00 | 34.52 01 |
| | | | Int pd to: 2/01/16 | 2/01/16 | | | | | | | | |
| 143 | 2/17/16 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 2/16 | 121689.62 | 21.99- | .00 | .00 | .00 | 21.99- | .00 | |
| 142 | 2/17/16 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 2/16 | 121689.62 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 141 | 2/16/16 | 1499 | ZZZZF-Late Charges  S/F REF# | 2/16 | 121689.62 | 34.52 | .00 | .00 | .00 | .00 | .00 | |
| 140 | 2/04/16 | 6031 | COUNTY TAX DISBURSED  PAYEE 31C00OJ #10578 TAR DUE 2/28/16  S/F WR REF# 10578 TAR 2187 CO | 2/16 | 121689.62 | 249.77- | .00 | .00 | .00 | 249.77- | .00 | |
| 139 | 2/04/16 | 1931 | COUNTY TAX ADVANCE  S/F WR REF# 10578 TAR 2187 CO | 2/16 | 121689.62 | 249.77 | 249.77 | .00 | .00 | 249.77 | .00 | |
| 138 | 2/02/16 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 2/16 | 121689.62 | 21.99- | .00 | .00 | .00 | 21.99- | .00 | |
| 137 | 2/02/16 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 2/16 | 121689.62 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | |
| 136 | 1/15/16 | 1919 | RECOVER ESCROW ADVANCE | 2/16 | 121689.62 | 42.27- | .00 | .00 | .00 | 42.27- | .00 | |

```
SR497CR-02                                                          8/14/17  1:49:46
VC1036                                                             JOB DT: 8/14/17
                            Nationstar Mortgage LLC                      PAGE:     6
                         DETAIL TRANSACTION HISTORY
```

| ---TRANSACTION--- | | | | NEXT | -AFTER TRANS. BALANCES- | | TOTAL | -------APPLIED------- | | | | |
| NBR | DATE | CODE | -----DESCRIPTION----- | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LOAN#: ████ | | | CONTINUED | | | | | | | | | |
| | | | Effective date: 1/14/16 | | | | | | | | | |
| 135 | 1/15/16 | 02 | PAYMENT, S/F WB REF# | 2/16 | 121689.62 | 42.27 | 732.74 | 410.66 | 279.81 | 42.27 | | .00 |
| | | | Effective date: 11/14/16  Int pd to: 1/01/16 | | | | | | | | | |
| 134 | 12/24/15 | 6074 | BORR PAID MI DISBURSED, S/F WB REF# | 1/16 | 122100.28 | .00 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 133 | 12/24/15 | 1974 | BORR PAID MI ADVANCE, S/F WR REF# | 1/16 | 122100.28 | 21.99 | 21.99 | .00 | .00 | 21.99 | | .00 |
| 132 | 12/08/15 | 1919 | RECOVER ESCROW ADVANCE, S/F WB REF# | 1/16 | 122100.28 | .00 | 42.27- | .00 | .00 | 42.27- | | .00 |
| 131 | 12/08/15 | 02 | PAYMENT, S/F WB REF#   Int pd to: 12/01/15 | 1/16 | 122100.28 | 42.27 | 732.74 | 409.72 | 280.75 | 42.27 | | .00 |
| 130 | 12/03/15 | 6074 | BORR PAID MI DISBURSED, S/F WB REF# | 12/15 | 122510.00 | .00 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 129 | 12/03/15 | 1974 | BORR PAID MI ADVANCE, S/F WR REF# | 12/15 | 122510.00 | 21.99 | 21.99 | .00 | .00 | 21.99 | | .00 |
| 128 | 11/09/15 | 1919 | RECOVER ESCROW ADVANCE, S/F WR REF# | 12/15 | 122510.00 | .00 | 42.27- | .00 | .00 | 42.27- | | .00 |
| 127 | 11/09/15 | 02 | PAYMENT, S/F WB REF#   Int pd to: 11/01/15 | 12/15 | 122510.00 | 42.27 | 725.26 | 414.09 | 268.90 | 42.27 | | .00 |
| 126 | 10/26/15 | 6074 | BORR PAID MI DISBURSED, S/F WB REF# | 11/15 | 122924.09 | .00 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 125 | 10/26/15 | 1974 | BORR PAID MI ADVANCE, S/F WR REF# | 11/15 | 122924.09 | 21.99 | 21.99 | .00 | .00 | 21.99 | | .00 |
| 124 | 10/09/15 | 1919 | RECOVER ESCROW ADVANCE, S/F WR REF# | 11/15 | 122924.09 | .00 | 42.27- | .00 | .00 | 42.27- | | .00 |
| 123 | 10/09/15 | 02 | PAYMENT, S/F WB REF#   Int pd to: 10/01/15 | 11/15 | 122924.09 | 42.27 | 725.26 | 413.19 | 269.80 | 42.27 | | .00 |
| 122 | 9/24/15 | 6074 | BORR PAID MI DISBURSED, S/F WB REF# | 10/15 | 123337.28 | .00 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 121 | 9/24/15 | 1974 | BORR PAID MI ADVANCE, S/F WR REF# | 10/15 | 123337.28 | 21.99 | 21.99 | .00 | .00 | 21.99 | | .00 |
| 120 | 9/11/15 | 1919 | RECOVER ESCROW ADVANCE, S/F WR REF# | 10/15 | 123337.28 | .00 | 42.27- | .00 | .00 | 42.27- | | .00 |
| 119 | 9/11/15 | 02 | PAYMENT, S/F WB REF#   Int pd to: 9/01/15 | 10/15 | 123337.28 | 42.27 | 725.26 | 412.29 | 270.70 | 42.27 | | .00 |
| 118 | 8/25/15 | 6074 | BORR PAID MI DISBURSED, S/F WB REF# | 9/15 | 123749.57 | .00 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 117 | 8/25/15 | 1974 | BORR PAID MI ADVANCE, S/F WR REF# | 9/15 | 123749.57 | 21.99 | 21.99 | .00 | .00 | 21.99 | | .00 |
| 116 | 7/23/15 | 6074 | BORR PAID MI DISBURSED, S/F WR REF# | 9/15 | 123749.57 | .00 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 115 | 7/23/15 | 1974 | BORR PAID MI ADVANCE, S/F WR REF# | 9/15 | 123749.57 | 21.99 | 21.99 | .00 | .00 | 21.99 | | .00 |
| 114 | 7/21/15 | 1919 | RECOVER ESCROW ADVANCE, S/F WB REF# | 9/15 | 123749.57 | .00 | 42.27- | .00 | .00 | 42.27- | | .00 |

SR497CR-02
VC1036

8/14/17  1:49:46
JOB DT: 8/14/17
PAGE:      7

Nationstar Mortgage LLC
DETAIL TRANSACTION HISTORY

LOAN#: ▮▮▮▮▮▮

CONTINUED

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS-PRINCIPAL | BALANCES-ESCROW | TOTAL AMOUNT | APPLIED PRINCIPAL | INTERST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 113 | 7/21/15 | 02 | PAYMENT | 9/15 | 123749.57 | 42.27 | 725.26 | 411.39 | 271.60 | 42.27 | .00 | .00 |
| | | | Int pd to: 8/01/15 | | | | | | | | | |
| 112 | 6/25/15 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 8/15 | 124160.96 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | .00 |
| 111 | 6/25/15 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 8/15 | 124160.96 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | .00 |
| 110 | 6/16/15 | 1919 | RECOVER ESCROW ADVANCE  S/F WR REF# | 8/15 | 124160.96 | .00 | 42.27- | .00 | .00 | 42.27- | .00 | .00 |
| 109 | 6/16/15 | 02 | PAYMENT  S/F WB REF# | 8/15 | 124160.96 | 42.27 | 725.26 | 410.49 | 272.50 | 42.27 | .00 | .00 |
| | | | Int pd to: 7/01/15 | | | | | | | | | |
| 108 | 5/20/15 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 7/15 | 124571.45 | .00 | 21.99- | .00 | .00 | 21.99- | .00 | .00 |
| 107 | 5/20/15 | 1974 | BORR PAID MI ADVANCE  S/F WR REF# | 7/15 | 124571.45 | 21.99 | 21.99 | .00 | .00 | 21.99 | .00 | .00 |
| 106 | 5/18/15 | 6031 | COUNTY TAX DISBURSED  PAYEE 31CO00J #10578 TAR DUE 6/28/15  S/F WR REF# 10578 TAR 0906 CO | 7/15 | 124571.45 | .00 | 253.63- | .00 | .00 | 253.63- | .00 | .00 |
| 105 | 5/18/15 | 1931 | COUNTY TAX ADVANCE  S/F WR REF# 10578 TAR 0906 CO | 7/15 | 124571.45 | 253.63 | 176.60 | .00 | .00 | 176.60 | .00 | .00 |
| 104 | 5/15/15 | 02 | PAYMENT | 7/15 | 124571.45 | 77.03 | 725.26 | 409.59 | 273.40 | 42.27 | .00 | .00 |
| | | | Int pd to: 6/01/15 | | | | | | | | | |
| 103 | 4/15/15 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 6/15 | 124981.04 | 34.76 | 21.99- | .00 | .00 | 21.99- | .00 | .00 |
| 102 | 4/10/15 | 02 | PAYMENT | 6/15 | 124981.04 | 56.75 | 725.25 | 408.69 | 274.29 | 42.27 | .00 | .00 |
| | | | Int pd to: 5/01/15 | | | | | | | | | |
| 101 | 4/06/15 | 6499 | YSCR REFUND DISBURSED  PAYEE 31CO0RCE #000364290 DUE 11/01/33  S/F SC REF# 0003642900 | 5/15 | 125389.73 | 14.48 | 419.48- | .00 | .00 | 419.48- | .00 | .00 |
| 100 | 3/18/15 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 5/15 | 125389.73 | 433.96 | 21.99- | .00 | .00 | 21.99- | .00 | .00 |
| 99 | 3/17/15 | 6000V | OVERAGE DISBURSED  PAYEE YOUNGRE #0003583838 DUE 0/00/00  S/F SC REF# 0003583838 | 5/15 | 125389.73 | 455.95 | 419.48- | .00 | .00 | 419.48- | .00 | .00 |
| 98 | 3/10/15 | 02 | PAYMENT  S/F WB REF# | 5/15 | 125389.73 | 875.43 | 827.13 | 407.80 | 275.18 | 144.15 | .00 | .00 |
| | | | Int pd to: 4/01/15 | | | | | | | | | |
| 97 | 2/26/15 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 4/15 | 125797.53 | 731.28 | 21.99- | .00 | .00 | 21.99- | .00 | .00 |
| 96 | 2/17/15 | 02 | PAYMENT  S/F WR REF# | 4/15 | 125797.53 | 753.27 | 827.13 | 406.91 | 276.07 | 144.15 | .00 | .00 |
| | | | Int pd to: 3/01/15 | | | | | | | | | |
| 95 | 2/05/15 | 6031 | COUNTY TAX DISBURSED  PAYEE 31CO00J #10578 TAR DUE 2/28/15  S/F WR REF# 10578 TAR 0480 CO | 3/15 | 126204.44 | 609.12 | 253.64- | .00 | .00 | 253.64- | .00 | .00 |
| 94 | 1/21/15 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 3/15 | 126204.44 | 862.76 | 21.99- | .00 | .00 | 21.99- | .00 | .00 |
| 93 | 1/08/15 | 02 | PAYMENT | 3/15 | 126204.44 | 884.75 | 827.13 | 406.02 | 276.96 | 144.15 | .00 | .00 |

SR497CR-02
VC1036

Nationstar Mortgage LLC
DETAIL TRANSACTION HISTORY

8/14/17  1:49:46
JOB DI: 8/14/17
PAGE:      8

LOAN#

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS-PRINCIPAL | BALANCES-ESCROW | TOTAL AMOUNT | APPLIED PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 92 | 12/11/14 | 6074 | S/F WB  REF#  BORR PAID MI DISBURSED | 2/15 | 126610.46 | 740.60 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 91 | 12/05/14 | 02 | S/F WR  REF#  PAYMENT | 2/15 | 126610.46 | 762.59 | 827.13 | 405.13 | 277.85 | 144.15 | | .00 |
| | | | Int pd to: 1/01/15 | | | | | | | | | |
| 90 | 12/02/14 | 1530 | S/F WB  REF#  ESCROW DEPOSIT | 1/15 | 127015.59 | 618.44 | 94.19 | .00 | .00 | 94.19 | | .00 |
| | | | S/F AD REF# 0000 | | | | | | | | | |
| 89 | 11/24/14 | 6074 | S/F WR  REF#  BORR PAID MI DISBURSED | 1/15 | 127015.59 | 524.25 | 21.99- | .00 | .00 | 21.99- | | .00 |
| 88 | 11/10/14 | 02 | S/F WR  REF#  PAYMENT | 1/15 | 127015.59 | 546.24 | 827.13 | 404.25 | 278.73 | 144.15 | | .00 |
| | | | Int pd to: 12/01/14 | | | | | | | | | |
| 87 | 11/06/14 | 02 | S/F WB  REF#  PAYMENT | 12/14 | 127419.84 | 402.09 | 422.88 | .00 | 278.73 | 144.15 | | .00 |
| | | | Int pd to: 11/01/14 | | | | | | | | | |
| 86 | 10/22/14 | 6074 | S/F WB  REF#  BORR PAID MI DISBURSED | 11/14 | 127419.84 | 257.94 | 101.16- | .00 | .00 | 101.16- | | .00 |
| 85 | 9/26/14 | 6074 | S/F WR  REF#  BORR PAID MI DISBURSED | 11/14 | 127419.84 | 359.10 | 101.16- | .00 | .00 | 101.16- | | .00 |
| 84 | 9/10/14 | 11 | S/F WR  REF#  PRINCIPAL PAYMENT | 11/14 | 127419.84 | 460.26 | 450.00 | 450.00 | .00 | .00 | | .00 |
| | | | Effective date: 9/08/14   S/F SP REF# 0000 | | | | | | | | | |
| 83 | 9/10/14 | 02 | S/F SP  REF# 0000  PAYMENT | 11/14 | 127869.84 | 460.26 | 423.87 | .00 | 279.72 | 144.15 | | .00 |
| | | | Effective date: 9/08/14   Int pd to: 10/01/14 | | | | | | | | | |
| 82 | 8/26/14 | 6074 | S/F WR  REF#  BORR PAID MI DISBURSED | 10/14 | 127869.84 | 316.11 | 101.16- | .00 | .00 | 101.16- | | .00 |
| 81 | 8/11/14 | 02 | S/F WR  REF#  PAYMENT | 10/14 | 127869.84 | 417.27 | 423.87 | .00 | 279.72 | 144.15 | | .00 |
| | | | Effective date: 8/11/14   Int pd to: 9/01/14 | | | | | | | | | |
| 80 | 7/25/14 | 6074 | S/F WR  REF#  BORR PAID MI DISBURSED | 9/14 | 127869.84 | 273.12 | 101.16- | .00 | .00 | 101.16- | | .00 |
| 79 | 7/21/14 | 02 | S/F WR  REF#  PAYMENT | 9/14 | 127869.84 | 374.28 | 423.87 | .00 | 279.72 | 144.15 | | .00 |
| | | | Effective date: 7/19/14   Int pd to: 8/01/14 | | | | | | | | | |
| 78 | 6/18/14 | 6074 | S/F WB  REF#  BORR PAID MI DISBURSED | 8/14 | 127869.84 | 230.13 | 101.16- | .00 | .00 | 101.16- | | .00 |
| 77 | 6/09/14 | 02 | S/F WR  REF#  PAYMENT | 8/14 | 127869.84 | 331.29 | 423.87 | .00 | 279.72 | 144.15 | | .00 |
| | | | Int pd to: 7/01/14 | | | | | | | | | |
| 76 | 5/22/14 | 6074 | S/F WB  REF#  BORR PAID MI DISBURSED | 7/14 | 127869.84 | 187.14 | 101.16- | .00 | .00 | 101.16- | | .00 |
| 75 | 5/15/14 | 6031 | S/F WR  REF#  COUNTY TAX DISBURSED | 7/14 | 127869.84 | 288.30 | 257.94- | .00 | .00 | 257.94- | | .00 |
| | | | PAYEE 31CO00J #TAR 9171 C DUE 6/28/14   S/F WR  REF# TAR 9171 CO | | | | | | | | | |
| 74 | 5/12/14 | 02 | S/F WB  REF#  PAYMENT | 7/14 | 127869.84 | 546.24 | 423.87 | .00 | 279.72 | 144.15 | | .00 |
| | | | Effective date: 5/10/14   Int pd to: 6/01/14 | | | | | | | | | |
| 73 | 5/09/14 | 02 | S/F WB  REF#  PAYMENT | 6/14 | 127869.84 | 402.09 | 423.87 | .00 | 279.72 | 144.15 | | .00 |

CONTINUED

```
SR497CR-02                                   Nationstar Mortgage LLC                        8/14/17  1:49:46
VC1036                                      DETAIL TRANSACTION HISTORY                      JOB DT: 8/14/17
                                                                                               PAGE:       9
```

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS. PRINCIPAL | BALANCES- ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE | MISC.PMTS/CD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LOAN# | | | | | | | | | | | | |
| | | | Int pd to: 5/01/14 | | | | | | | | | |
| 72 | 4/18/14 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 5/14 | 127869.84 | 257.94 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 71 | 3/25/14 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 5/14 | 127869.84 | 359.10 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 70 | 3/10/14 | 02 | PAYMENT  S/F WR REF# | 5/14 | 127869.84 | 460.26 | 432.71 | .00 | 279.72 | 152.99 | .00 | |
| | | | Int pd to: 4/01/14 | | | | | | | | | |
| 69 | 3/10/14 | 600V | OVERAGE DISBURSED  S/F WB REF# | 4/14 | 127869.84 | 307.27 | 106.07- | .00 | .00 | 106.07- | .00 | |
| | | | PAYEE YOUNGRE #0002459952 DUE 0/00/00 | | | | | | | | | |
| | | | S/F SC REF# 0002459952 | | | | | | | | | |
| 68 | 2/25/14 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 4/14 | 127869.84 | 413.34 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 67 | 2/10/14 | 02 | PAYMENT  S/F WB REF# | 4/14 | 127869.84 | 514.50 | 432.71 | .00 | 279.72 | 152.99 | .00 | |
| | | | Int pd to: 3/01/14 | | | | | | | | | |
| 66 | 2/10/14 | 02 | PAYMENT  S/F WB REF# | 3/14 | 127869.84 | 361.51 | 432.71 | .00 | 279.72 | 152.99 | .00 | |
| | | | Int pd to: 2/01/14 | | | | | | | | | |
| 65 | 2/06/14 | 6031 | COUNTY TAX DISBURSED | 2/14 | 127869.84 | 208.52 | 257.95- | .00 | .00 | 257.95- | .00 | |
| | | | PAYEE 3ICOOOJ #TAR 8776 C DUE 2/28/14 | | | | | | | | | |
| | | | S/F WR REF# TAR 8776 CO | | | | | | | | | |
| 64 | 1/24/14 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 2/14 | 127869.84 | 466.47 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 63 | 1/10/14 | 02 | PAYMENT  S/F WB REF# | 2/14 | 127869.84 | 567.63 | 432.71 | .00 | 279.72 | 152.99 | .00 | |
| | | | Int pd to: 1/01/14 | | | | | | | | | |
| 62 | 12/20/13 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 1/14 | 127869.84 | 414.64 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 61 | 11/21/13 | 6074 | BORR PAID MI DISBURSED  S/F WR REF# | 1/14 | 127869.84 | 515.80 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 60 | 11/12/13 | 02 | PAYMENT  S/F WR REF# | 1/14 | 127869.84 | 616.96 | 432.71 | .00 | 279.72 | 152.99 | .00 | |
| | | | Effective date: 11/09/13 | | | | | | | | | |
| | | | Int pd to: 12/01/13 | | | | | | | | | |
| 59 | 10/24/13 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 12/13 | 127869.84 | 463.97 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 58 | 10/09/13 | 02 | PAYMENT  S/F WR REF# | 12/13 | 127869.84 | 565.13 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 11/01/13 | | | | | | | | | |
| 57 | 9/20/13 | 6074 | BORR PAID MI DISBURSED  S/F WB REF# | 11/13 | 127869.84 | 412.14 | 101.16- | .00 | .00 | 101.16- | .00 | |
| 56 | 9/13/13 | 1401 | ZZZZF-Late Charges  S/F WR REF# | 11/13 | 127869.84 | 513.30 | 14.65 | .00 | .00 | .00 | | 14.65 01 |
| 55 | 9/13/13 | 1401 | ZZZZF-Late Charges  S/F D REF# | 11/13 | 127869.84 | 513.30 | 15.32 | .00 | .00 | .00 | | 15.32 01 |
| 54 | 9/13/13 | 02 | PAYMENT  S/F D REF# | 11/13 | 127869.84 | 513.30 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 10/01/13 | | | | | | | | | |
| 53 | 9/13/13 | 02 | PAYMENT  S/F WB REF# | 10/13 | 127869.84 | 360.31 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 9/01/13 | | | | | | | | | |

```
SR497CR-02                                    Nationstar Mortgage LLC                        8/14/17  1:49:46
VC1036                                      DETAIL TRANSACTION HISTORY                       JOB DT: 8/14/17
                                                                                               PAGE:      10
```

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS. PRINCIPAL | BALANCES ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC. PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | CONTINUED | | | | | | | | | |
| 52 | 8/27/13 | 6074 | S/F WB REF# BORR PAID MI DISBURSED | 9/13 | 127869.84 | 207.32 | 101.16- | .00 | .00 | 101.16 | .00 | |
| 51 | 8/12/13 | 02 | S/F WR REF# PAYMENT | 9/13 | 127869.84 | 308.48 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 8/01/13 | | | | | | | | | |
| 50 | 7/22/13 | 6074 | S/F WB REF# BORR PAID MI DISBURSED | 8/13 | 127869.84 | 155.49 | 101.16- | .00 | .00 | 101.16 | .00 | |
| 49 | 7/08/13 | 02 | S/F WR REF# PAYMENT | 8/13 | 127869.84 | 256.65 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 7/01/13 | | | | | | | | | |
| 48 | 6/24/13 | 6074 | S/F WB REF# BORR PAID MI DISBURSED | 7/13 | 127869.84 | 103.66 | 101.16- | .00 | .00 | 101.16 | .00 | |
| 47 | 6/18/13 | 0283 | S/F WR REF# PAYMENT | 7/13 | 127869.84 | 204.82 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 6/01/13 | | | | | | | | | |
| 46 | 6/17/13 | 1499 | S/F SP REF# ZZZZ-Late Charges | 6/13 | 127869.84 | 51.83 | 14.65 | .00 | .00 | .00 | .00 | 14.65 01 |
| 45 | 6/12/13 | 9302 | S/F REF# REV Other         061013 | 6/13 | 127869.84 | 51.83 | 446.03- | .00 | 293.04- | 152.99- | .00 | |
| 44 | 6/10/13 | 02 | S/F WB REF# PAYMENT | 7/13 | 127869.84 | 204.82 | 446.03 | .00 | 293.04 | 152.99 | .00 | |
| | | | Int pd to: 6/01/13 | | | | | | | | | |
| 43 | 5/23/13 | 6074 | S/F WB REF# BORR PAID MI DISBURSED | 6/13 | 127869.84 | 51.83 | 101.16- | .00 | .00 | 101.16 | .00 | |
| 42 | 5/17/13 | 6011 | S/F WR REF# COUNTY TAX DISBURSED PAYEE 3ICOOOJ #TAR 6712 C DUE 6/28/13 | 6/13 | 127869.84 | 152.99 | 311.00- | .00 | .00 | 311.00- | .00 | |
| 41 | 5/13/13 | 02 | S/F WR REF# TAR 6712 CO PAYMENT | 6/13 | 127869.84 | 463.99 | 459.34 | .00 | 306.35 | 152.99 | .00 | |
| | | | Int pd to: 5/01/13 | | | | | | | | | |
| 40 | 5/08/13 | 0283 | S/F WB REF# PAYMENT | 5/13 | 127869.84 | 311.00 | 490.37 | .00 | 306.35 | 184.02 | .00 | |
| 39 | 4/16/13 | 1499 | S/F WB REF# ZZZZF-Late Charges | 4/13 | 127869.84 | 126.98 | 15.32 | .00 | .00 | .00 | .00 | 15.32 01 |
| 38 | 4/15/13 | 6074 | S/F WR REF# BORR PAID MI DISBURSED | 4/13 | 127869.84 | 126.98 | 101.16- | .00 | .00 | 101.16 | .00 | |
| 37 | 3/18/13 | 6074 | S/F WR REF# BORR PAID MI DISBURSED | 4/13 | 127869.84 | 228.14 | 101.16- | .00 | .00 | 101.16 | .00 | |
| 36 | 3/15/13 | 02 | S/F WR REF# PAYMENT | 4/13 | 127869.84 | 329.30 | 490.37 | .00 | 306.35 | 184.02 | .00 | |
| | | | Int pd to: 3/01/13 | | | | | | | | | |
| 35 | 3/07/13 | 600V | S/F WB REF# OVERAGE DISBURSED #0001370076 PAYEE YOUNGER SC REF# 0001370076 DUE 0/00/00 | 3/13 | 127869.84 | 145.28 | 94.19- | .00 | .00 | 94.19- | .00 | |
| 34 | 2/15/13 | 02 | S/F SC REF# PAYMENT | 3/13 | 127869.84 | 239.47 | 490.37 | .00 | 306.35 | 184.02 | .00 | |
| | | | Int pd to: 2/01/13 | | | | | | | | | |
| 33 | 2/14/13 | 6074 | S/F IV REF# BORR PAID MI DISBURSED | 2/13 | 127869.84 | 55.45 | 101.16- | .00 | .00 | 101.16 | .00 | |

```
SR493CR-02                                                                8/14/17  1:49:46
VC1036                          Nationstar Mortgage LLC                   JOB DT: 8/14/17
                               DETAIL TRANSACTION HISTORY                        PAGE: 11
```

CONTINUED

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS. PRINCIPAL | BALANCES ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | ESCROW | MISC.PMTS SUSPENSE/CD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 2/12/13 | 6031 | COUNTY TAX DISBURSED PAYEE 31C000J #TAR 5990 C DUE S/F WR REF# TAR 5990 CO | 2/13 2/28/13 | 127869.84 | 156.61 | 311.01- | .00 | .00 | 311.01- | .00 |
| 31 | 1/16/13 | 6074 | BORR PAID MI DISBURSED S/F WR REF# | 2/13 | 127869.84 | 467.62 | 101.16- | .00 | .00 | 101.16- | .00 |
| 30 | 1/15/13 | 02 | . PAYMENT S/F WR REF# Int pd to: 1/01/13 | 2/13 1/01/13 | 127869.84 | 568.78 | 490.37 | .00 | 306.35 | 184.02 | .00 |
| 29 | 12/20/12 | 1530 | ESCROW DEPOSIT S/F IV REF# 0000 | 1/13 | 127869.84 | 384.76 | 101.16 | .00 | .00 | 101.16 | .00 |
| 28 | 12/18/12 | 6074 | BORR PAID MI DISBURSED S/F WR REF# | 1/13 | 127869.84 | 283.60 | 101.16- | .00 | .00 | 101.16- | .00 |
| 27 | 12/17/12 | 6074 | BORR PAID MI DISBURSED S/F WR REF# | 1/13 | 127869.84 | 384.76 | 101.16- | .00 | .00 | 101.16- | .00 |
| 26 | 12/10/12 | 02 | PAYMENT S/F WR REF# Int pd to: 12/01/12 | 1/13 12/01/12 | 127869.84 | 485.92 | 490.37 | .00 | 306.35 | 184.02 | .00 |
| 25 | 11/20/12 | 6074 | BORR PAID MI DISBURSED S/F WB REF# | 12/12 | 127869.84 | 301.90 | 101.16- | .00 | .00 | 101.16- | .00 |
| 24 | 11/13/12 | 02 | PAYMENT S/F WR REF# Effective date: 11/10/12 Int pd to: 11/01/12 | 12/12 11/01/12 | 127869.84 | 403.06 | 503.69 | .00 | 319.67 | 184.02 | .00 |
| 23 | 10/16/12 | 6074 | BORR PAID MI DISBURSED S/F WR REF# | 11/12 | 127869.84 | 219.04 | 101.16- | .00 | .00 | 101.16- | .00 |
| 22 | 10/10/12 | 02 | PAYMENT S/F WB REF# Effective date: 10/09/12 Int pd to: 10/01/12 | 11/12 10/01/12 | 127869.84 | 320.20 | 503.69 | .00 | 319.67 | 184.02 | .00 |
| 21 | 9/14/12 | 1919 | RECOVER ESCROW ADVANCE S/F WB REF# | 10/12 | 127869.84 | 136.18 | 47.84- | .00 | .00 | 47.84- | .00 |
| 20 | 9/14/12 | 02 | PAYMENT S/F WB REF# Int pd to: 9/01/12 | 10/12 9/01/12 | 127869.84 | 184.02 | 503.69 | .00 | 319.67 | 184.02 | .00 |
| 19 | 9/13/12 | 6074 | BORR PAID MI DISBURSED S/F WB REF# | 9/12 | 127869.84 | .00 | 101.16- | .00 | .00 | 101.16- | .00 |
| 18 | 9/13/12 | 1974 | BORR PAID MI ADVANCE S/F WR REF# | 9/12 | 127869.84 | 101.16 | 47.84 | .00 | .00 | 47.84 | .00 |
| 17 | 8/16/12 | 6074 | BORR PAID MI DISBURSED S/F WR REF# | 9/12 | 127869.84 | 53.32 | 101.16- | .00 | .00 | 101.16- | .00 |
| 16 | 8/09/12 | 1919 | RECOVER ESCROW ADVANCE S/F WB REF# | 9/12 | 127869.84 | 154.48 | 29.54- | .00 | .00 | 29.54- | .00 |
| 15 | 8/09/12 | 02 | PAYMENT S/F WB REF# Int pd to: 8/01/12 | 9/12 8/01/12 | 127869.84 | 184.02 | 503.69 | .00 | 319.67 | 184.02 | .00 |
| 14 | 7/10/12 | 1919 | RECOVER ESCROW ADVANCE S/F WB REF# | 8/12 | 127869.84 | .00 | 184.02- | .00 | .00 | 184.02- | .00 |
| 13 | 7/10/12 | 02 | PAYMENT S/F WB REF# Int pd to: 7/01/12 | 8/12 7/01/12 | 127869.84 | 184.02 | 503.69 | .00 | 319.67 | 184.02 | .00 |
| 12 | 7/03/12 | 2643 | ESCROW ADJ S/F LB REF# Effective date: 7/01/12 | 7/12 | 127869.84 | .00 | 213.56- | .00 | .00 | 213.56- | .00 |

LOAN# ▮▮▮▮

```
SR497CR-02                              Nationstar Mortgage LLC                        8/14/17  1:49:46
VC1036                                DETAIL TRANSACTION HISTORY                      JOB DT: 8/14/17
                                                                                          PAGE: 12
---TRANSACTION---             NEXT -AFTER TRANS.BALANCES-    TOTAL  -----------APPLIED-----------  MISC.PMTS
NBR   DATE   CODE -----DESCRIPTION------  DUE  PRINCIPAL   ESCROW  AMOUNT  PRINCIPAL INTEREST ESCROW SUSPENSE/CD MISC.PMTS

LOAN#                    CONTINUED

11  7/03/12 19   ESCROW ADVANCE    7/12  127869.84   213.56   213.56        .00      .00  213.56      .00
   Effective date: 7/01/12
           S/F LB   REF#
10  7/03/12 8103 NEW LOAN NOCASH   7/12  127869.84      .00  127869.84- 127869.84-    .00      .00      .00
   Effective date: 7/01/12
           S/F LB   REF#
        S/F LB  * * * * TOTALS * * * *        119236.38-14130.86
```